UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

        MARTIN SCHACKNER,

                      Debtor.
---------------------------------------------------------x

Chapter 7

Case No.: 08-73742-478

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Kirschenbaum & Kirschenbaum P.C.
Attorneys for the Chapter 7 Trustee
Kenneth Kirschenbaum, Esq.
By: Steven B. Sheinwald, Esq.
200 Garden City Plaza, Suite 500
Garden City, New York 11530


Thaler & Gertler LLP
Attorneys for the Debtor
By: Richard G. Gertler, Esq.
90 Merrick Avenue, Suite 400
East Meadow, New York 11554


Siller Wilk LLP
Claimant
By: Eric J. Snyder, Esq.
Stephen D. Hoffman, Esq.
675 Third Avenue, 9th Floor
New York, New York 10017


Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the Trustee's objection to proof of claim number 2 filed by Siller Wilk LLP in the amount of $343,367.08 for prepetition legal fees. This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (B), and (O) and 11 U.S.C. § 502. The following constitutes the Court's findings of fact and conclusions of law as mandated by Fed. R. Bankr. P. 7052.

## FACTS

Debtor was the Chief Financial Officer for Breslin Realty Development Corp. ("BRDC"). Debtor was allegedly terminated from BRDC when he gave testimony adverse to the interests of BRDC. Debtor submitted a claim for unemployment insurance which was challenged by BRDC. BRDC also commenced a state court lawsuit against the Debtor in January of 2005 (the "Breslin Action"). The state court action alleged that the Debtor used his position as the Chief Financial Officer to authorize bonuses and payments to himself and several employees without consent of BRDC's principal, Wilbur Breslin, and sought $500,000 in damages on the grounds of, *inter alia*, breach of contract, fraud, conversion, unjust enrichment with the last claim brought under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The RICO claim carried the threat of treble damages. Siller Wilk was retained by the Debtor prepetition to defend against the Breslin Action.

Siller Wilk removed the Breslin Action to the United States District Court in an attempt to get the RICO claim dismissed to eliminate the debtor's potential exposure to treble damages. The District Court denied a motion to dismiss the RICO claim that was made on behalf of the Debtor and the parties proceeded to conduct discovery. Siller Wilk conducted more than 10

depositions, some purportedly at the request of the Debtor. In the middle of 2006, the Debtor moved for summary judgment to dismiss the RICO claim and the motion was denied. Trial was then scheduled to take place in April 2007. On or about March 21, 2007, BRDC and Siller Wilk, on behalf of the Debtor, reached an oral settlement. Siller Wilk received the proposed settlement agreement on April 2, 2007. The proposed agreement did not contain any general release for the benefit of the Debtor.

On or about April 17, 2007, Siller Wilk was informed that the Debtor was the subject of a criminal investigation by the Nassau County District Attorney's Office regarding the alleged payment of additional salary. The Breslin Action was stayed pending the outcome of the criminal investigation.

Meanwhile, on or about March 1, 2007, Siller Wilk had attempted to get the Debtor to assign a security interest in his 20% interest in a real estate investment company, Arbor Inn Homes LLC, as collateral for the payment of the Debtor's outstanding legal fees accrued in defending the Breslin Action. The only substantial asset the Debtor had at the time was his 20% interest in Arbor Inn Homes LLC and approximately $200,000 equity in his residence. The Debtor never executed the agreement, stating that his 20% interest in Arbor Inn Homes LLC was the only asset he could use to settle the Breslin Action. If he agreed to Siller Wilk's request, he would not be financially able to resolve the BRDC's claim. Debtor had previously paid Siller Wilk approximately $200,000 of the more than $500,000 of legal fees that had accrued and the Debtor and Siller Wilk were unable to reach any arrangement regarding the reduction or payment of the outstanding legal fees. On May 18, 2007, Siller Wilk filed a motion with the District Court to be relieved as Debtor's counsel in the Breslin Action which was subsequently

granted.

The Debtor had to retain new counsel to finalize the settlement in the Breslin Action. Under the settlement, the Debtor agreed to pay BRDC $625,000 secured by the debtor's 20% interest in Arbor Inn Homes and a mortgage against his residence in the amount of $145,000.

On July 14, 2008, Siller Wilk filed an involuntary Chapter 7 bankruptcy petition against the Debtor in this Court. Siller Wilk was the only petitioning creditor and listed a claim for legal fees in the amount of $330,274.95. Debtor filed an answer on August 5, 2008 asserting, *inter alia*, that Siller Wilk's claim is subject to a bona fide dispute as to liability and/or amount. Debtor claimed that the Siller Wilk's claim was for work performed in formulating a settlement agreement with BRDC and alleged that Siller Wilk filed the involuntary petition solely for the purpose of avoiding the settlement agreement as a preference under the Bankruptcy Code. Accordingly, Debtor argued that the avoidance of the settlement agreement would render Siller Wilk's services valueless. As Siller Wilk's claim was the subject of a bona fide dispute, the Debtor asserted that Siller Wilk cannot be a petitioning creditor under 11 U.S.C. § 303 and the involuntary petition should be dismissed.

The Court held a hearing on the Debtor's objection to the involuntary petition on August 14, 2008 and set deadlines for discovery. Subsequently, the Debtor withdrew his answer and consented to the entry of an order for Chapter 7 relief. The order of relief was entered by the Court on September 26, 2008.

On December 22, 2009, the Trustee filed the motion seeking to disallow Siller Wilk's proof of claim based upon the absence of any documentation supporting the claim and the Debtor's dispute over Siller Wilk's claim. The Debtor argued that Siller Wilk's legal services

did not produce any benefit or result in any value to the Debtor. Siller Wilk's fees totaled more than the $500,000 in damages sought by BRDC under the state law claims. While BRDC's RICO claim would have resulted in treble damages of $1.5 million, the Debtor argued that the RICO claim was a throw-in without any serious expectation by Breslin of prevailing. The Debtor argues Siller Wilk allegedly wasted time and money attacking the RICO claim in District Court.

Rather than obtaining a settlement which reduced the debtor's liability, Siller Wilk negotiated a settlement which resulted in a liability of $625,000 to the Debtor. In addition, the proposed settlement did not provide for a general release which exposed the Debtor to further liability. Debtor accuses Siller Wilk of acting in its own best interest rather than that of the client by attempting to have the Debtor assign his interest in Arbor Inn Homes LLC as security for its legal fees when the Debtor's ownership interest was his only substantial source for funding a potential settlement with BRDC. When the Debtor and Siller Wilk were unable to reach an agreement with respect to legal fees, the Debtor asserts that Siller Wilk abandoned him by withdrawing as counsel on the eve of trial and then filed the involuntary petition to set aside the Debtor's settlement agreement with BRDC so that it could participate with BRDC in any distributions arising from the Debtor's interest in Arbor Inn Homes LLC as a creditor of the Debtor's bankruptcy estate.

Siller Wilk filed its objection to the Trustee's motion and the documentation supporting its legal fees with the Court under seal. Siller Wilk argued that it provided value by reducing the Debtor's exposure to treble damages under the RICO claim which Siller Wilk perceived as a real threat and there were sworn affidavits by third parties that could negatively impact the Debtor's

credibility and veracity as a potential witness. Siller Wilk also asserted that while it negotiated an oral settlement with BRDC, it was the Debtor's replacement counsel that negotiated and finalized the settlement with BRDC.

A hearing on the Trustee's motion in regard to the allowance of Siller Wilk's claim was held on March 16, 2010. It was noted that the Trustee is a neutral party in this dispute over Siller Wilk's proof of claim and needs a resolution as to the allowance of Siller Wilk's claim in order to determine whether Siller Wilk would be entitled to receive any distribution from the Debtor's bankruptcy estate. The only other significant creditor of the bankruptcy estate is BRDC. Other than the allegations as stated herein, the Debtor did not object to any particular time spent or particular rate charged for the legal services provided by Siller Wilk.

## DISCUSSION

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f). Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects. The party objecting to the proof of claim has the burden of rebutting the presumption of validity. *In re Koloch*, 416 B.R. 375, 378 (Bankr. E.D.N.Y. 2009).

While the Debtor claims that Siller Wilk's filing of the involuntary petition was to advance its own interest by seeking to have the Debtor's settlement with BRDC set aside as a preference and thereby undoing the settlement in which Siller Wilk had a hand in negotiating and for which it seeks reimbursement of its legal fees, the Court notes that there is no legal authority that provides that an attorney's filing of an involuntary petition against a client would

require a reduction of the attorney's claim for legal fees for prepetition services. Siller Wilk as a prepetition creditor has the ability under the Bankruptcy Code to file an involuntary petition against the Debtor. The Debtor had an opportunity to object to the involuntary petition and in fact initially contested the involuntary petition on several grounds, including the defense that Siller Wilk's claim was subject to a bona fide dispute. However, the Debtor subsequently withdrew his objection and consented to the entry of the order of relief. Having agreed to proceed under the Bankruptcy Code, the Debtor cannot now claim that Siller Wilk's filing of the involuntary petition was wrongful and should be penalized for it. Indeed, the time to object to Siller Wilk's filing of the involuntary petition and whether Siller Wilk's claim was the subject of a bona fide dispute was prior to the Court's entry of the order of relief. Having found no evidence of any illegality or impropriety relating to Siller Wilk's filing of the involuntary petition, Siller Wilk's legal fees should not be reduced simply because the filing undid some of the work for which Siller Wilk is seeking reimbursement.

As to whether the fees for Siller Wilk's legal services are reasonable, the courts in this Circuit have considered, *inter alia,* the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186-90 (2d Cir. 2007)(finding that courts should consider the factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d.714 (5th Cir. 1974)). While it is natural that "a reasonable, paying client

wishes to spend the minimum necessary to litigate the case effectively", *Id.*, 522 F.3d at 190, the amount involved in a case and the results obtained are not the only deciding factors in determining whether an attorney's fees are reasonable. Siller Wilk expended time and labor in defending the Debtor in the Breslin Action over the course of several years which involved filing pleadings and conducting discovery and depositions. The attorneys at Siller Wilk that worked on the Breslin Action were experienced and capable litigation attorneys and they were faced with a litigious Plaintiff. While the Debtor argues that the fees incurred were excessive, he does not specify with particularity as to which of the services and charges where objectionable. Rather, in hindsight, the Debtor disagrees with the strategy and efforts undertaken by Siller Wilk in defending the Breslin Action and asserts that the $200,000 Siller Wilk received prepetition was adequate and that Siller Wilk should not be entitled to receive any more legal fees. What appears to be simple and clear in hindsight may or may not be obvious during the pendency of litigation and different attorneys who are just as experienced and capable could undertake different litigation strategies. It is not the Court's position to determine whether one litigation strategy is more or less effective than another, especially when legal strategies are subject to many variables and may change over time as a result of discovery and steps taken by opposing counsel. While the Debtor is unsatisfied with the amount of legal fees incurred, legal services amounting to more than $500,000 were nevertheless provided by Siller Wilk prior to its withdrawal as Debtor's counsel. It is unfortunate that the parties could not resolve a reduction of these fees amicably,
but since the parties could not do so, the Court finds Siller Wilk's fees to be reasonable and its claim allowed.

## CONCLUSION

Based upon the foregoing, the Trustee's objection to Siller Wilk's proof of claim in the amount of $343,367.08 is denied.

So ordered.


Dated: Central Islip, New York
       April 6, 2010

                                    s/Dorothy Eisenberg
                                    Dorothy Eisenberg
                                    United States Bankruptcy Judge